# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REALYA MANAGEMENT, LLC,<br>REALYA FUND RVIII LLC,<br>LOT REALYA HOLDINGS, LLC,<br>LOT REALYA INVESTORS LLC,<br>LOT REALYA EQUITY LLC;<br><br>    Plaintiffs,<br><br>    v.<br><br>IMOVINA GROUP, LLC<br><br>    Defendant, and<br><br>LATEXOK JV PARTERS LLC and<br>LATEXOK MANAGER, LLC,<br><br>    Nominal Defendants. | CIVIL ACTION<br><br>Case No. 1:23-cv-00142 -GBW |

State of Israel    )
                       ):ss:
City of Petach Tikva  )

## AFFIDAVIT OF RACHELIE ALPEROVITZ

I, Rachelie Alperovitz, hereby state and depose the following under the penalties of perjury:

1. My name is Rachelie Alperovitz. I currently reside in Petach Tikva, Israel.

2. I am over the age of 18 and have personal knowledge of the facts stated herein.

3. I am the Chief Executive Officer of Realya, a real estate investment firm that specializes in investments in the affordable housing segment in the United States. Realya subsidiaries formed to raise project funds and acquire interests in new properties (referred to collectively as "Realya Owners") are the majority investors in Latexok JV Partners LLC ("Latexok").

4. Specifically, Realya Owners own ███████████████████████ Defendant Imovina Group LLC owns ████████████.

5. Realya, through its affiliate Realya Management, also owns ████████ ████████████ Latexok Manager LLC ("Manager"), which is the manager of Latexok.

6. True and correct copies of the Operating Agreements of Latexok and the Manager are attached to Realya's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") as Exhibits 1 and 2, respectively.

7. The original manager of the Manager (and thus Latexok) was Imovina.

8. From inception, Latexok had a set Budget and written Business Plan agreed to by the Realya Owners and Imovina. True and correct copies of the Budget and Business Plan of Latexok are attached to the Motion as Exhibit 3. Anything more than a *de minimis* deviations from the Budget or Business Plan required Realya's consent.

9. Because Realya put up ████████████████████████████ while agreeing to make Imovina the initial manager of the business, Realya required the parties' contracts to include terms that would allow Realya to remove Imovina from management under certain conditions. As reflected in the operating agreements of Latexok and the Manager, among the vital controls imposed on Imovina as manager was the requirement to get Realya's consent for a range of "Major Decisions," which included any deviations from the written Business Plans and more than █ ████████████ deviations from agreed Budgets for Latexok. Other Major Decisions included taking out loans, making distributions, and altering levels of cash reserves.

10. Throughout 2022, Realya sought information about Latexok's apparent operational losses and low level of distributions, and sought additional financial records and information from Imovina. Realya was consistently rebuffed; Imovina provided access to "Real Page," an online

2

accounting portal, for a period of time but arbitrarily retracted access in October 2022. And Imovina has refused to provide Realya with bank records despite repeated requests.

11. On this project and several others, Imovina has failed to provide accurate or timely tax and financial reporting, in breach of its obligations under the Latexok and Manager operating agreements, and made a range of Major Decisions without Realya's consent. On the Latexok project, that includes the following.

12. The Latexok Operating Agreement required Imovina to make an initial capital contribution of ▮▮▮▮▮▮▮ but Imovina records presented to Realya reflected that Imovina contributed only ▮▮▮▮▮▮▮ leaving Latexok short on funds from day one. Imovina subsequently claimed that Latexok had an operating shortfall, and tried to use it as justification to have Latexok take out a "priority loan." Realya did not consent, and any such loan represented a Major Decision made without Realya's consent.

13. Realya did not consent to any change in Latexok's cash reserves, budget for operating expenses, or budget for non-operating expenses.

14. Imovina caused Latexok to take out at least one loan ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, without Realya's knowledge or consent, and informed Realya that it intended to seek more loans without Realya's consent. Imovina's records also indicate that Imovina caused Latexok to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was also without Realya's consent.

15. Imovina has materially departed from the refinancing schedule set out in the Business Plan for Latexok with respect to the owned real property, skipping some planned

refinancings altogether, and taking steps to refinance other properties *ahead* of schedule and on substantially worse terms than planned.

16. Indeed, despite my express statements that Realya did not consent and that taking out the mortgage would be a Major Decision made without Realya's consent, Imovina recently closed on a new mortgage on one of Latexok's properties, title to which is held by Northwood II Owner LLC. Copies of the January 28, 2023 title commitment and closing statement furnished to Realya by Imovina are attached to the Motion as Exhibit 8. A true and correct copy of an email I sent to Imovina in December 2022 notifying them that Realya did not consent is attached to the Motion as Exhibit 5.

17. The Latexok Business plan called for Latexok to make distributions to Realya of ▮▮▮▮▮▮▮▮▮▮ through the end of 2022. Imovina instead caused Latexok to distribute only a small portion of that amount, without Realya's consent for the deviation. Worse, Imovina's books reflect a distribution to Realya ▮▮▮▮ that does not agree to the amounts actually paid and shown by bank records (▮▮▮). True and correct copies of Realya's bank records showing distributions from Latexok are attached to the Motion as Exhibit 9.

18. True and correct copies of a December 7, 2022 letter and notice of removal of Respondents from management are attached to Claimants' motion as Exhibit 1.

19. Following their December 7th removal from management, Respondents ignored Realya's notices and failed to provide any of the necessary information and documents. A true and correct copy of a December 12, 2022 email from counsel to Respondents is attached to the Motion as Exhibit 2. Despite repeated post-removal demands, Imovina still has refused to provide bank statements or other financial records, answer questions about Imovina's accounting entries, or relinquish control of the properties and operating funds.

20. A member of Imovina, Jason Pfeiffer, received ███████████████ from another Realya-Imovina joint venture (Capital Park) on or about May 21, 2020 for non-business personal use, an unauthorized diversion of funds. Realya had no knowledge of this transfer at the time and was only informed afterwards.

21. On another Realya-Imovina joint venture (Lima Club), Realya has recently learned that Imovina has been paying itself (through an affiliate with common ownership) management fees of ██████████ in excess of the contractually permitted amount that was to start at ██████████.

22. Realya has significant experience and expertise managing properties directly, and often does so through Realya Management, a Realya affiliate that is one of the Plaintiffs in this case. Realya is currently in the process of retaining a national real estate management company to conduct the day-to-day management of the Apartment Buildings, which has managed hundreds of properties, including as a Court-appointed receiver.

23. I affirm under the penalties of perjury under the laws of the United States that the foregoing is true and correct.

Dated: Petach Tikva, Israel
February 6th, 2023

_____
Rachelie Alperovitz